IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VINCENT L.,[1]

          Plaintiff,

  v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

No. 3:24-cv-873-HL

OPINION & ORDER

HALLMAN, Magistrate Judge:

      Plaintiff Vincent L. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq*. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405. For the following reasons, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.      Plaintiff's Application**

Plaintiff alleges disability based on the combined effects of his mental health impairments. Tr. 274.[2] At the time of Plaintiff's alleged onset date, August 1, 2016, he was 39

---

[2] Citations to "Tr." are to the Administrative Record, ECF No. 12.

years old. Tr. 110. Plaintiff applied for DIB on December 3, 2019, alleging disability beginning August 1, 2016. Tr. 110. His applications were denied initially and on reconsideration. Tr. 79-87, 97-103. Plaintiff subsequently requested a hearing, which was held on May 9, 2023 before Administrative Law Judge (ALJ) Jo Hoenninger. Tr. 66-74. A supplemental hearing was held on August 15, 2023. Tr. 40-65. Plaintiff appeared and testified at both hearings, represented by counsel. Tr. 40-74. On September 22, 2023, the ALJ issued a decision denying Plaintiff's claim. Tr. 16-39. Plaintiff requested Appeals Council review, which was denied on March 28, 2024. Tr. 1-6. Plaintiff then sought review before this Court.[3]

## II.     Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§

---

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. ECF 1.

404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.   The ALJ's Decision

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity between his alleged onset date, August 1, 2016, and his date last insured, September 30, 2018.

Tr. 21. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: major depressive disorder and generalized anxiety disorder. Tr. 22. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: He could have tolerated occasional contact with the general public.

Tr. 24.

At step four, the ALJ determined that, "[t]hrough the date last insured, the claimant was capable of performing past relevant work as a caregiver and construction worker II." Tr. 31. Alternatively, at step five the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Plaintiff could perform, such as day worker, commercial or industrial cleaner, and kitchen helper. Tr. 32. The ALJ therefore found Plaintiff not disabled. Tr. 32.

## DISCUSSION

Plaintiff argues the ALJ committed four harmful errors. He contends the ALJ erred by (1) discounting his subjective symptom testimony without a clear and convincing reason for doing so, (2) improperly evaluating the medical opinions of Nurse Practitioner David Stevens and MA Pamela Wood, (3) failing to consider relevant Listings at step three, and (4) failing to perform an adequate analysis at steps four and five. For the reasons that follow, the Court finds the ALJ did not err, and affirms.

I.  **Symptom Testimony**

Plaintiff first asserts that the ALJ improperly rejected his subjective symptom testimony. Pl.'s Opening Br. at 13-18. This Court disagrees.

A.  **Legal Standards**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that he could not work because of symptoms related to his mental health impairments. Tr. 47-51. Plaintiff shared that he had suffered a mental breakdown following his divorce, with constant crying, hiding under his desk at work, fear, anxiety, vomiting, dry heaving, and looking over his shoulder. Tr. 47. He testified to having spent time in a rehabilitation center for anxiety and depression, difficulty getting out of bed and leaving the house, resulting in the inability to get his mail, take his kids to school, or take his dogs for walks, eventually leading to losing his house. Tr. 47-48. Plaintiff shared that he moved in with his mother because he had no place else to go, and suffered from thoughts of self-harm and suicide in 2017 and 2018. Tr. 49-51. Plaintiff had "bad days" more than half the time in 2017 to 2018, with difficulty getting out bed, tearfulness, remaining in the car when attempting to go out in public, and returning home and hiding in his room after completing a single errand. Tr. 51. On "good days," Plaintiff would do daily tasks like help his mother walk the dogs. Tr. 52. These symptoms could be intermittent. Plaintiff testified that he could have one "good week" followed by a couple bad weeks, where he wouldn't want to get out of bed, and suffered more severe symptoms. Tr. 52-53.

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 25. Specifically, the ALJ discussed the

objective medical evidence, and Plaintiff's activities of daily living when discounting his subjective symptom testimony. Tr. 25-26. This Court addresses each rationale in turn.

### C. Objective Medical Evidence

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle*, 533 F.3d at 1161; *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins*, 261 F.3d at 857, they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); see also 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681).

At the hearing, Plaintiff testified about frequent vomiting, nervousness, anxiety, panic attacks, tearfulness, and difficulty leaving the house. *See* Tr. 47-51. Plaintiff further testified that after having a "good week," the next week he could not even get out of bed or his room and could not go to a store or would hurry up to go home and hide in his room after going places. Tr. 51-53.

8 – OPINION & ORDER

In contrast to Plaintiff's allegations, the ALJ cited several objective medical records that suggested otherwise. For example, the ALJ noted that despite "dysphoric and anxious" mood and affect plaintiff had "good and appropriate behavior," logical and appropriate thought content, and that he was "cooperative." Tr. 27 (citing Tr. 565). The ALJ also identified other records where, despite reports of anxiety, depression, or stomachaches, Plaintiff also had objective mental status findings that were largely or entirely normal. Tr. 27-28. These mental status examinations showed good eye contact, appropriate behavior, logical thought process, normal attention, no suicidal ideation, and good insight and judgment. Tr. 27-28 (citing Tr. 519, 525, 527, 528, 533, 539, 541, 552, 558, 565, 583, 598). These records all conflicted with or showed a lack of support for Plaintiff's allegations of more significant limitations and amount to substantial evidence supporting the ALJ's decision to discount plaintiff's testimony about the severity of his mental health symptoms.

The ALJ also reasonably discounted parts of Plaintiff's testimony that described symptoms occurring outside the 2016 to 2018 relevant period. In weighing a claimant's symptom testimony, the ALJ may disregard statements unrelated to the relevant period. Social Security Ruling (SSR) 16-3p, *available at* 2017 WL 5180304. The ALJ explained that much of the claimant's testimony described ailments he suffered before 2016, which was irrelevant to the time period at issue. Tr. 24. In particular, the ALJ explained that the nervous breakdown Plaintiff described happened before 2011, when Plaintiff reportedly stopped working, which is long before the relevant period. Tr. 25, 440, 444, 459. The ALJ also explained that a hospitalization and rehabilitation stay for treatment of anxiety and depression discussed in testimony also occurred prior to 2014, based upon January 2014 treatment notes in which Plaintiff stated that the psychiatric hospitalization occurred over a year ago. Tr. 25, 448.

Plaintiff urges the Court to adopt a different interpretation of the record, but does not undermine the substantial evidence supporting the ALJ's decision. In particular, Plaintiff argues that Defendant "grossly mischaracterizes the record to assert that numerous highly remarkable findings during the relevant time period were mostly normal." Pl. Reply at 2. But Plaintiff overstates the case. The ALJ highlights different aspects of the mental health records from Plaintiff, no doubt, but the citation to the positive notations in Plaintiff's records is not a "gross[] mischaracterize[ation]." Plaintiff highlights the negative findings in the medical records the ALJ cites, but does not refute the positive aspects the ALJ relied upon. *Id.* at 2-3. Plaintiff emphasizes that the medical records he cites match up with his testimony, and are "exactly contradictory to what was stated by the Defendant. *Id.* at 3. Plaintiff's arguments about these records are an effort to have this Court re-weigh the evidence, however, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—Plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though Plaintiff clearly interprets the evidence differently, he has not (and cannot) establish error by simply advancing a different interpretation of the medical evidence. The ALJ's conclusion "showed [her] work," and was supported by substantial evidence, so the Court will not disturb it on this basis.

### D. Activities of Daily Living

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with his reported daily activities. Tr. 24. Activities of daily living can form the basis

for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. § 404.1529(c)(3)(i). The Ninth Circuit has found such routine activities as playing video games, using public transportation, and preparing meals can undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her or her credibility). To discount a plaintiff's testimony, an ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn,* 495 F.3d at 639.

      The ALJ reasonably found several of Plaintiff's reported daily activities clashed with his allegations about mental health symptoms. Although Plaintiff alleged that he difficulty getting out of bed, frequent tearfulness, suicidal ideation, and the inability to go out in public, Tr. 47-53, the ALJ noted that he was quite active at the time. He exercised almost daily, biked three to four times a week, worked as a caregiver for his mother and also worked for at least a few weeks as a salesperson on commission, kickboxed three or four times weekly, swam laps most days, attended a seminar and a meditation event, went to an evening baseball game, tried to keep himself busy so as not to have to be at home, took multiple trips to Oregon, attended meditation meetup groups, and attended several job interviews, some of which reportedly went well. Tr.

524, 528, 530, 531, 541, 546, 551, 1235, 1239, 1241, 1244, 1271, 1273, 1526, 1834. Plaintiff also shared custody of his two teenage children, was in the same long-term relationship for several years, did all of the shopping and cooking for his household, regularly completed housework, and had no problems handling his own bathing or hygiene. Tr. 534, 546, 715, 1211, 1537, 1542. These reported activities all stand in contrast to Plaintiff's description of the limitations he suffered on "bad days," and his testimony that he was unable get out of bed or do anything for a week or two at a time. Tr. 51. Because the ALJ reasonably cited several activities that conflict with Plaintiff's allegations about the limitations her mental health symptoms cause, this was another clear and convincing reason for the ALJ to rely upon to discount his testimony.

## II.  Medical Opinion Evidence

Plaintiff also argues the ALJ did not properly consider disabling opinions of treating nurse practitioner, David Stevens, PMHNP-BC, and treating mental healthcare provider, Pamela Wood, MA, LAT. Pl. Br, ECF No. 14 at 7-13. The Court disagrees.

### A.  Legal Standards

For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may

explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

B.     David Stevens, PMHNP-BC

On April 27, 2023, treating nurse practitioner, David Stevens, PMHNP-BC, completed a medical source statement, wherein he opined the following: (1) Plaintiff suffers marked limitations in 17 out of 20 basic work activities; (2) he has marked limitations in the paragraph "B" criteria of adapt or manage oneself and concentrate, persist, or maintain pace; (3) his impairments meet the paragraph "C" criteria; (4) he would be off task and unproductive over 30% of a 40-hour workweek; (5) he would miss 4 or more days per month if attempting full-time work; (6) his limitations have existed since at least September 2018; and (7) his challenging diagnoses of PTSD, ADHD, and borderline personality disorder create a situation of emotional fragility and difficulty managing tasks, especially when combined with his interpersonal challenges. Tr. 1495-1498.

The ALJ considered Mr. Stevens' medical opinion and rejected it as unpersuasive. Tr. 29-30. The ALJ did so because Mr. Stevens' opinion was issued several years after the date last insured, and did not indicate that it applied to the relevant 2016-18 time period. Tr. 29. Further, the ALJ concluded Mr. Stevens' opinion was inconsistent with the medical records showing

Plaintiff's "largely normal mental status examination findings and independent and active activities of daily living." Tr. 30.

The ALJ adequately discussed the strength of the evidence underlying Mr. Stevens' opinions in the record and its inconsistency with other evidence when finding it unpersuasive. Tr. 29-30. The supportability and consistency factors require ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support her or her medical opinion," and its consistency with other sources. 20 C.F.R. § 404.1520c(c)(1-2). The ALJ first discounted Mr. Stevens' opinion because it was "issued several years after the date last insured." Tr. 29. The almost five-year gap between the medical opinion and the Plaintiff's date last insured directly undermines the relevance of Mr. Stevens' opinion, and was proper for the ALJ to consider when evaluating supportability. 20 C.F.R. § 404.1520c(c)(1).

As described in further detail above, the ALJ also considered several medical records from the relevant period reflecting Plaintiff's mental health issues in a positive light, and explanations of his daily activities that conflicted with the limitations Mr. Stevens' opinion imposes. Tr. 27-30. The ALJ reasonably found these several normal findings and ability to do daily tasks undermined the persuasiveness of Mr. Stevens opinion that, for example, he would be off task and unproductive over 30% of a 40-hour workweek or would miss 4 or more days per month if attempting full-time work. In doing so, the ALJ sufficiently considered the supportability and consistency of Mr. Stevens' medical opinion when concluding it was poorly supported by explanation and objective medical evidence.[4]

---

[4] Defendant also argues the ALJ "concluded that [Mr. Stevens'] opinion is not supported by objective medical evidence from the relevant period." Def. Br. at 8. In support, Defendant notes Mr. Stevens' opinion does not refer to any objective medical evidence, let alone objective

C.   Pamela Wood, MA, LAT

On May 1, 2023, treating mental healthcare provider, Pamela Wood, MA, LAT, provided a letter about Plaintiff, noting that he began treatment with her agency in March 2022 with another therapist and that she had been treating Plaintiff since March 2023. Tr. 1535. Ms. Wood noted that in March 2022, Plaintiff reported that his mental health symptoms worsened after significant health problems in 2014, which resulted in major surgeries in July 2014, May 2018, and August 2019. Tr. 1535. Ms. Wood further stated that Plaintiff had been unable to work since this time because his mental health condition continued to significantly impact his level of functioning and it will take many months or years to the point where he can work a consistent part-time or full-time schedule. Tr. 1535.

As with Mr. Stevens' opinion, the ALJ adequately considered both the supportability and consistency of Ms. Wood's opinion when finding it unpersuasive. Concerning supportability, the ALJ specifically identified that there was "no evidence" that Ms. Wood had any insight into Plaintiff's condition during the relevant period, and that the medical record upon which she relied reached back only to March, 2022. Tr. 30 (citing Tr. 1535). Plaintiff fails to point to any objective evidence at all Ms. Wood relied upon to support her decision that the ALJ overlooked. Pl. Reply at 8-9. The ALJ also reasonably considered the inconsistencies between Ms. Wood's opinion and the record. As she did with Mr. Stevens' opinion, the ALJ contrasted the significant limitations in Ms. Wood's opinion with the capabilities Plaintiff showed during the relevant period and medical records from 2016-18. In sum, the ALJ sufficiently considered the

---

medical evidence prior to the September 2018 date last insured. *Id.* The ALJ did not rely on this rationale, however. Instead, he relied on the fact that Mr. Stevens issued his opinion several years after the relevant period. *See* Tr. 29. Defendant's arguments about the strength of the evidence are impermissible *post hoc* rationalizations the Court cannot consider on appeal. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009).

supportability and consistency of Ms. Wood's medical opinion when concluding it was poorly supported by explanation and objective medical evidence.

### III.    Step Three

Plaintiff also argues the ALJ erred because she did not properly consider whether his limitations met or equaled relevant Listings at step three. Pl. Br. at 13. At step three, the ALJ determines whether a claimant's impairment or combination of impairments meets or equals the criteria for a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Where an impairment does so, it is per se disabling and the ALJ has no discretion in awarding benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). To demonstrate that an impairment medically equals a listing, the claimant must show the impairment meets all of the medical criteria in that listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* "[To] equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526(a)). Unless a claimant presents evidence in an effort to establish equivalence, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ found that Plaintiff's impairments did not meet or equal any listing, including, in relevant part, Listings 12.04 (Depressive, bipolar, and related disorders) and 12.06 (Anxiety and obsessive compulsive disorders). Tr. 23-24; *see generally* 20 C.F.R. Part 404, Subpart P, App. 1, 12.04, 12.06. These listings require, in part, the claimant to show an extreme limitation in one, or marked limitations in two, of the following four functional areas (referred to as the

paragraph B criteria): understand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. Part 404, Subpart P, App. 1, 12.04B, 12.06B. Here, the ALJ reasonably found Plaintiff did not meet or equal a listing because he had moderate limitation in the ability to interact with others and no more than mild limitation in the other paragraph B criteria through the September 2018 date last insured. Tr. 23.

The ALJ supported the decision that plaintiff's limitations did not meet or equal a relevant Listing with substantial evidence. Social security claimants bear the burden at step three to show "signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Tackett*, 180 F.3d at 1099. Step three imposes "strict standards" to satisfy "because they automatically end the five-step inquiry before residual functional capacity is even considered." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). The ALJ reasonably considered medical evidence and other record evidence of daily activities from the relevant period concerning Plaintiff's ability to understand, remember or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage himself. Tr. 23-24. Plaintiff's arguments that the record and Mr. Stevens' and Ms. Wood's opinions show he had marked limitations in his ability to concentrate, persist, or maintain pace and adapt or manage himself recapitulate his earlier arguments about the strength of the evidence, and impermissibly ask this Court to reweigh evidence. *Ahearn* , 988 F.3d at 1115. Though Plaintiff argues the ALJ's conclusions are "boilerplate," and "cite[] to no medical evidence," Pl. Reply at 10, the ALJ made many specific citations to the record, and incorporated Plaintiff's medical history in her analysis, which is sufficient at step three. 20 C.F.R. §

404.1520(d). Because the ALJ supported her decision that Plaintiff's limitations were not per se disabling at step three, the Court will not disturb the ALJ's opinion on this basis.

### IV.  Steps Four and Five

Finally, Plaintiff argues the ALJ erred by relying on vocational expert testimony at steps four and five that was the product of an "incomplete hypothetical that failed to account for additional well-supported limitations that the ALJ neglected to include in the RFC." Pl. Br. at 18. The RFC is the most a person can do, despite the person's physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

In formulating Plaintiff's RFC, the ALJ reasonably relied on persuasive medical opinions and the overall record to determine the most Plaintiff could do, despite his limitations. Plaintiff argues the ALJ erred by failing to include limitations the ALJ discredited elsewhere—like his need to be absent more than one day per month, off task and unproductive more than 15% of the time, or the inability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes more than 33% of the workday. Pl. Br. at 18. As discussed above, however, the ALJ reasonably rejected Plaintiff's version of these limitations, and supported the decision to do so with substantial evidence. Likewise with the severe limitations suggested in Mr. Stevens' and Ms. Wood's medical opinions. Plaintiff's final argument merely rehashes his earlier

arguments about symptom testimony and the medical record and therefore fails for the reasons previously articulated. *See Stubbs-Danielson*, 539 F.3d at 1175–76 (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."). Because Plaintiff's step four and five argument adds nothing new, the Court finds the ALJ did not err at these stages of the analysis either.

## CONCLUSION

For the reasons given above, the Commissioner's decision is AFFIRMED.

DATED this  4  day of April, 2025.

                                                                _____
                                                                ANDREW HALLMAN
                                                                United States Magistrate Judge

19 – OPINION & ORDER